# UNITED STATES DISTRICT COURT

FILED

EASTERN DISTRICT OF CALIFORNIA      AUG 28 2003

oOo

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
         DEPUTY CLERK

UNITED STATES OF AMERICA

v.

ALLEN HARROD

**CRIMINAL COMPLAINT**

CASE NUMBER:

MAG- 03-192 DAD

(Name and Address of Defendant)

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief as follows: (Track Statutory Language of Offense)

**Count 1.** Between on or about September 1, 1999, and on or about October 4, 2001, in Sacramento County, State and Eastern District of California and elsewhere, the defendant Allen Harrod, did knowingly transport and aid and abet the transportation of a minor, identified as Victim 1, in interstate commerce with the intent that Victim 1 engage in any sexual activity for which any person can be charged with a criminal offense, including but not limited to California Penal Code Section, 288, all in violation of 18 U.S.C. §§ 2423(a) and 2;

**Count 2.** Between on or about April 30, 1991, and continuing through October 4, 2001, in Sacramento, State and Eastern District of California, and elsewhere, the defendant Allen Harrod, did knowingly transport and aid and abet the transportation of a minor, identified as Victim 3, in interstate commerce with the intent that Victim 3 engage in any sexual activity for which any person can be charged with a criminal offense, including but not limited to California Penal Code, Section, 288, and Texas Penal Code Sections 21.11 and 22.021, all in violation of 18 U.S.C. §§ 2423(a) and 2;

**Count 3.** Between on or about September 1, 2000 and on or about October 4, 2001, in Sacramento, State and Eastern District of California, and elsewhere, the defendant Allen Harrod, did knowingly transport and aid and abet the transportation of a minor, identified as Victim 2, in interstate commerce with the intent that Victim 2 engage in any sexual activity for which any person can be charged with a criminal offense, including but not limited to California Penal Code, Section, 288, all in violation of 18 U.S.C. §§ 2423(a) and 2.

I further state that I am a(n) Special Agent with the Federal Bureau of Investigation and that this complaint is based on the following facts:

▸ **See attached affidavit.**

_X_ Continued on the attached sheet and made a part hereof.

Signature of Complainant  Jeffrey L. Rinek
Federal Bureau of Investigation

Sworn to before me, and subscribed in my presence

8/28/03                        at    Sacramento, California

Date                                 City and State

Dale A. Drozd, United States Magistrate Judge    |    Signature of Judicial Officer

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO, CALIFORNIA

<u>AFFIDAVIT</u>

1.  I, Jeffrey L. Rinek am a Special Agent of the Federal Bureau of Investigation (FBI) and have been so employed for twenty-eight years. I am currently assigned to the Sacramento Office, and work crimes involving the sexual exploitation of children. I am currently the primary coordinator in the Sacramento Division, for the FBI's National Center for the Analysis of Violent Crime (NCAVC) which conducts investigative and behavioral analysis of violent crimes, including the sexual exploitation of children. In 1992, I attended Bureau-sponsored training for investigations of violent crime including the sexual exploitation of children. On June 17, 1996, I attended FBI training regarding the behavior of Sexually Violent Offenders. On January 17, 1997, I attended a workshop on Child Abduction and Sexual Predators, sponsored by the Bureau. On January 20, 1998, I attended training conducted by the FBI's National Center for the Analysis of Violent Crime (NCAVC) and received certification as a Psychological Profiler. On February 26, 1998, I received additional, advanced training for profiling the sexually violent offender, and regarding behavior analysis in Violent Crimes. In 1999, I attended training for coordinators of the National Center for the Analysis of Violent Crime (NCAVC) and received certification as a coordinator for the NCAVC. In 2000, I

1

attended advanced training and received certification as an advanced NCAVC Coordinator. I attend conferences on a monthly basis concerning the interviewing of sex offenders, and analysis of the behaviors of sexual offenders who have been released on parole by the California Department of Corrections. I have participated in the execution of search warrants on more than fifteen occasions concerning the sexual abuse of children and child pornography trafficking. I have interviewed more than fifty offenders concerning their participation in the sexual abuse of children, and in the trafficking of child pornography. I have personally reviewed more than a thousand graphic images depicting the sexual abuse and exploitation of children. Additionally, I have examined numerous images depicting preferential sexual offenders who have graphically recorded their own sexual abuse of children. I have reviewed journals of preferential sexual offenders who have recorded and recounted their sexual exploitations of children along with their fantasies and goals in their sexual exploitation of children.

Based on my training and experience I believe that preferential sexual offenders who victimize or intend to victimize children will collect, manufacture, or trade in child pornography. I know that among the items most coveted by such offenders are the images they create which depict their own molestation of children. In addition, such offenders will often seek out other images of child pornography to add to their own homemade collection. By securing images depicting other minors engaged in sexually

explicit conduct, the offender's sexual predilection for children is validated by the knowledge there are others out there who feel as he does. With the advent of the Internet, child sexual offenders can download such images with ease and purported anonymity. Child sex offenders will categorize, organize, and sequester their child pornography based on the importance it has to the offender, which can vary from offender to offender. Offenders who relocate, or who fear they may lose their child pornography may place it in secure storage, hide it in a geographically familiar location, or even place it with other offenders they have befriended. I believe that every offender, no matter how threatened they may be with discovery, or prosecution, will maintain a cherished number of such pornographic photographs, even after destroying other evidence they believe may be seized by law enforcement.

2. The information presented in this affidavit was obtained from written reports, interviews of victims and information provided by other law enforcement investigators and prosecutors.

3. On September 26, 2001, the Folsom Police Department spoke with an Informant, an adult child of Allen Harrod, who had resided with Harrod, his second wife Irene Harrod, and their numerous children in Folsom, CA. The Informant told police that Allen Harrod had created his own religion wherein he and his wife Irene had engaged in ritualistic acts of child sexual abuse and molestation for a period of years. Based on the Informant's complaint, the

3

1  Folsom Police served a search warrant at Allen Harrod's
2  residence which resulted in his arrest and the arrest of his
3  wife Irene, for child molestation.  All of the minors in
4  their home at the time were removed from their custody.
5          4.   Based on the original complaint by the
6  informant, and the investigation by the Folsom Police
7  Department and Sacramento District Attorney's Office, I have
8  learned the following:
9          (a)  Allen Harrod, established his own religion,
10 which he considered to be a branch of the Mormon Church.
11 Allen Harrod is a friend/associate of Michael La Brecque, who
12 he met when the two served together at Mather Air Force Base.
13 Through his friendship with Allen Harrod, La Brecque became a
14 follower of Harrod's purported branch of Mormonism.
15         (b)  Harrod's first wife was named Ila.  They
16 settled in the Sacramento area and produced five children --
17 four girls and a boy.  Harrod later married Ila's sister
18 Irene.  They produced five children as well -- three boys and
19 two girls.  Michael La Brecque married a woman named
20 Julliette.  The La Brecques settled in Fort Worth, TX, and
21 they had five children -- four girls and one son.
22         (c)  Harrod's self proclaimed "religious" teachings
23 proselytized the sexual abuse of children as a means of
24 promoting their sexual maturation, from childhood to
25 adulthood.  Harrod established proceedings, events,
26 holidays, and "religious" teachings to direct the activities
27 of his followers which primarily consisted of his own family
28 and the La Brecque family.  Harrod dictated the activities of

4

1  everyone that followed his teachings and insured that
2  everyone had knowledge of what he taught.  Harrod dictated
3  travel between Sacramento and Fort Worth, as well as the
4  sexual actions of both adults and children.  Harrod dictated
5  his teachings in writing, by voice, including telephone, and
6  by insuring journals were kept by his followers of their
7  actions.  Harrod relied on the adults of both family's to
8  insure the compliance of the children to his teachings.
9  Virtually nothing occurred without Harrod's knowledge and
10 approval.  Both the Harrods and La Brecques produced numerous
11 children in their marriages, and both Allen and Irene Harrod,
12 and Michael and Julliette La Brecque engaged in sexual
13 conduct with their children as part of the practice of their
14 "religion."
15         (d)  To date, there are twenty-two children
16 identified as having either Allen Harrod or Michael La
17 Brecque as a father.  Most, if not all of these children have
18 been sexually molested.
19         5.  On July 30, 2003, Victim 1, an eighteen-year
20 old child of Michael La Brecque, was interviewed at the
21 Sacramento Office of the FBI.  Victim 1 provided information
22 concerning Michael La Brecque, and other minor children who
23 were sexually abused by Michael La Brecque and Allen Harrod.
24 The following is a brief summary of Victim 1's statement:
25         (a)  When Victim 1 was six or seven years old,
26 Michael La Brecque began to sexually molest her by fondling,
27 masturbating and having oral sex with her.  Michael La
28 Brecque continued this sexual abuse until Victim 1 was

1   thirteen years old and experienced her first menstrual
2   period, sometime after June 2, 1998.
3           (b) Around this time period, Michael La Brecque
4   told Victim 1 that she had about a year before she would have
5   to travel to Sacramento, California to achieve adult status
6   from Allen Harrod.
7           (c). In the fall of 1999, when Victim 1 was
8   fourteen years old, she was taken to the airport by her
9   Father Michael La Brecque who placed her on a flight to
10  Sacramento. Upon arriving in Sacramento, Victim 1 was met by
11  Allen Harrod who took her to his home in Folsom, California.
12  Victim 1 believed that she was expected to participate in
13  sexual activity, and accordingly, did all she could to avoid
14  contact with Allen Harrod. After only a month-long stay
15  with the Harrod family in Folsom, Allen Harrod sent Victim 1
16  back to the La Brecque family in Fort Worth, Texas. Upon her
17  arrival in Texas, Michael La Brecque told victim 1 that she
18  had failed her ceremony to becoming an adult. La Brecque
19  told Victim 1 that she would have one more year in the La
20  Brecque home before she would have to return to Sacramento
21  and Allen Harrod.
22          (c) At the end of that year, on or about October,
23  2000, Victim 1, who was now 15 years old, was again placed on
24  an airline flight from Texas to Sacramento to journey to
25  Allen Harrod in Sacramento, State and Eastern District of
26  California. As with her first trip, Allen Harrod met her at
27  the airport and drove her to the Harrod residence. On her
28  first night at the Harrod residence, Victim 1 shared a

6

1  bedroom with one of Harrod's daughters, (hereinafter
2  identified as Victim 4). Victim 4 told Victim 1 that Allen
3  Harrod had told Victim 4 to tell Victim 1 that she must
4  accomplish three levels of sexual activity before attaining
5  adulthood. The first level was sexual intercourse, the
6  second was oral sex, and the third and final was sodomy.

7      (d) Victim 1 said that approximately two weeks into
8  this second visit to the Harrod home, she was ordered into a
9  room by Allen Harrod and told to undress. Allen Harrod was
10 assisted by other older minor children associated with
11 Michael La Brecque. For a period of three consecutive days,
12 Allen Harrod sexually assaulted Victim 1 by committing sexual
13 intercourse, forcing oral copulation and committing sodomy.
14 Subsequent to the three-day period of sexual assault, Victim
15 1 was told that she had "passed". Victim 1 had a phone
16 conversation with Michael La Brecque wherein he congratulated
17 her on passing, thereby confirming to Victim 1 that Michael
18 La Brecque knew why she had traveled to Sacramento from
19 Texas.

20     (e) After she had "passed" into adulthood, Victim
21 1's airline tickets were not used and allowed to expire.
22 Victim 1 was not permitted to leave Harrod's home and was
23 continually assaulted sexually for approximately the next
24 year until she was rescued by Folsom Police in October 2001.
25 At that time, Victim 1 was 16 years old

26     (f) Victim 1 said that during each sexual assault,
27 while at the Harrod residence, she heard what sounded like a
28 camera clicking, coming from behind the walls of the room.

7

5.   Victim 2 is the younger sister of Victim 1. As with Victim 1, Victim 2 was sent to Sacramento by Michael La Brecque, between on or about September, 2000, and October, 2001 after she experienced her first menstrual cycle, for the purpose of having sex with Allen Harrod.  During the search of the Harrod residence on October 4, 2001, Folsom Police seized a journal dated September, 2001, kept by Victim 2 wherein she writes about her sexual contact with Allen Harrod in his efforts to make her an adult.  Another name for the ceremonies to attain adulthood, which Victim 2 used in her journal entries was "presentation."  Victim 1 advised during her FBI interview that she was present in the house when Victim 2 arrived from Fort Worth, Texas for her "presentation."

6.   On August 4, 2003, Victim 3, a child of Allen Harrod was interviewed at the Sacramento Office of the FBI. Victim 3, who is now nineteen years old, provided information concerning himself, his mother Irene Harrod, Michael La Brecque and Juliette La Brecque.  The following is a brief summary of the information Victim 3 provided:

(a)  Until his sixth year of life, Victim 3 resided in the Harrod household.  When he was six years old, his mother Irene called Victim 3 into her bedroom where she was alone and undressed.  Victim 3 stated Irene Harrod subsequently orally molested him.

(b) Victim 3 said when he was seven years old, sometime in 1991, he boarded a plane in Sacramento with Irene Harrod, and the two flew to Texas to the La Brecque residence

8

1  in Fort Worth.  Within hours of arriving in Texas, at the
2  LaBrecque home, he was instructed by Irene Harrod, to proceed
3  to Juliette La Brecque's bedroom.  Victim 3 remembered
4  entering the room and observing Juliette laying on the bed
5  naked.  Juliette told Victim 3 to take off his clothes.
6  Victim 3 said he was then forced by both Juliette La Brecque,
7  and Irene Harrod, who was in the room taking pictures with a
8  Polaroid "600" camera, to assume three different positions of
9  sexual intercourse.  Victim 3 said he was afraid he would be
10 smothered when Juliette La Brecque positioned herself on top
11 of him, because she was so much bigger than he was.
12         (c) Victim 3 said that from when he was seven,
13 until Allen Harrod's arrest in Sacramento, CA, in October,
14 2001, he was forced to live at the La Brecque house and would
15 only be allowed to visit the Harrod household in Folsom, CA
16 for short periods of time.  Victim 3 and his brother were
17 very close and according to Victim 3, his brother would "do
18 things" for their father, Allen Harrod, in order to get
19 permission for Victim 3 to travel to Sacramento for brief
20 visits.
21         (d) Victim 3 said that as he became older, both
22 Juliette La Brecque and his mother Irene would molest him so
23 he would become erect, after which they would measure his
24 penis with a measuring instrument.  Juliette would do this in
25 Texas and Irene would measure him when he was in Sacramento.
26 Victim 3 said that when he and Irene Harrod arrived the first
27 time at Fort Worth, Texas they were met by Michael La
28 Brecque, Juliette La Brecque, and the rest of the La Brecque

9

family. Victim 3 said that Irene accompanied him for the first trip and the entire La Brecque family met them at the airport so he wouldn't be anxious since he had never met them before. Victim 3 said that throughout the time of his stay at the La Brecque residence, he would be transported to the airport for his trips back to Sacramento by Michael La Brecque alone or with Juliette La Brecque and other children.

(e) Victim 3 said that on one of his visits in Sacramento, between on or about October, 2000, and on or about October, 2001, he was forced to stand in a room of the Harrod's residence. Also in the room with him, was Victim 1, Allen Harrod, and Irene Harrod. According to Victim 3, Victim 1 was forced to lay on the floor of the room, on her back, while Irene Harrod positioned herself over Victim 1, on her hands and knees. Victim 3 said that Allen Harrod then had sexual intercourse with Irene Harrod, and deliberately dripped his ejaculate on both Victim 1 and Irene Harrod. Victim 3 said that Victim 1 was then forced to lick the ejaculate from herself and Irene, and then "french kiss" with Victim 3, who had been forced to observe.

f. Victim 3 said that he was forced to reside at the La Brecque home until October, 1991, when he was removed by Texas Child Protective Services, because of Allen Harrod's arrest in Sacramento. Victim 3 said that he was beaten on a daily basis by Michael La Brecque. Michael La Brecque kept three heavy leather belts which he used for beatings. One of the belts broke because it had been used so much. Victim 3 said that on at least one occasion, Michael La Brecque beat

10

him with a two-inch by four-inch type piece of wood. Victim 3 said that after April 30, 1999, when he was fifteen years old, Michael La Brecque began to handcuff him tightly behind his back and would leave the handcuffs on for both full, and partial days. Victim 3 said that Juliette La Brecque would throw household items at him.

  g. Victim 3 said he has never been examined by a doctor, dentist, nor has he been to school more than two weeks in his life. Victim 3 said that Michael La Brecque had broken all of his fingers, dislocated his shoulder, and broken other bones in his body. Juliette La Brecque had caused a deep cut on his forehead which left a scar.

  h. Your affiant's observation of Victim 3 revealed his marked inability to walk upright or correctly, his bent fingers, and apparent inability to read, and write, along with delays in answering questions.

  i. Victim 3 described that when Allen Harrod was arrested in Sacramento, on or about October, 2001, Michael La Brecque purchased a shredding machine to start destroying evidence. Victim 3, who was at the La Brecque home in Texas at the time, said La Brecque ordered him to shred journals and other papers on which victims had recorded sexual activities. Victim 3 also observed Michael La Brecque burn boxes which contained pictures depicting the La Brecque and Harrod children engaged in sexually explicit conduct.

  7. Based on my experience and training concerning preferential sexual offenders, I am aware that offenders will

11

always keep visual depictions of their sexual offenses. When threatened with capture or prosecution offenders will transfer their contraband to private storage facilities or to coconspirators engaged in similar activity. In this matter, Victim 1 believes that pictures were taken of her, and Victim 3 observed a Polaroid model 600 camera used to photograph him while being molested. The Folsom Police Department, during their search of the Harrod house, noted but did not seize a Polaroid camera. Family members of both the Harrod's and La Brecque's report that Michael La Brecque assisted Allen Harrod when he fled Sacramento while on bail, and helped to dispose of evidence. I believe that Michael La Brecque is holding evidence provided to him for safe keeping by Allen Harrod. I believe that Michael La Brecque has maintained evidence of his own criminal activities and currently has possession of that evidence. Investigation of this matter has determined that Allen Harrod, and his teachings dictated extensive record keeping and photographic documentation of the "religious" activities. Family members in contact with the La Brecque family advise that Michael and Juliette La Brecque, and the other La Brecque family members residing at 512 11th Street, Fort Madison, Iowa, are continuing in the ways and teachings of Allen Harrod. I believe that Michael La Brecque is safeguarding for Allen Harrod, child pornography and other evidence of the sexual "religious" activities.

       8. Based on the aforementioned, I believe probable cause exists that Allen Harrod, Irene Harrod, Michael La

1  Brecque and Juliette La Brecque are in violation of 18 U.S.C.
2  Sections 2423(a) and 2 which makes it a Federal crime for any
3  person to aid and abet the knowing transportation of a minor
4  in interstate or foreign commerce with the intent that the
5  minor engage in any sexual activity for which any person can
6  be charged with a criminal offense; and 18 U.S.C. Section
7  2251A(1), which makes it a federal crime for any parent,
8  legal guardian, or other person having custody or control of
9  a minor who sells or otherwise transfers custody or control
10 of such minor with knowledge that, as a consequence of the
11 sale or transfer, the minor will be portrayed in a visual
12 depiction engaging in, or assisting another person to engage
13 in, sexually explicit conduct.

Jeffrey L. Rinek
Special Agent,
Federal Bureau of Investigation

Subsciribed and sworn before
me this 28th day of August, 2003

Dale A. Drozd
U.S. MAGISTRATE JUDGE

13